# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KRISTIN HUBBARD,

        Plaintiff,

vs.

RAYMOND JAMES FINANCIAL SERVICES, INC., a Florida corporation, and RAYMOND, JAMES & ASSOCIATES, INC., a Florida corporation,

        Defendants.
_____/

Case No. 08 C 960

Hon. Harry D. Leinenweber

Magistrate Judge Maria Valdez

## DECLARATION OF HEATHER MUELLER

I, Heather Mueller, declare as follows:

    1. I am over the age of 18 years and have personal knowledge of the facts stated herein.

    2. I am employed by Raymond James & Associates ("RJA"), a wholly-owned subsidiary of Raymond James Financial, Inc ("RJF"). My title is _Supervisor_. RJA requires its employees to annually certify their receipt, review, understanding, and agreement to abide by the provisions of the Raymond James Financial Business Ethics and Corporate Policy. My responsibilities include managing the annual ethics policy certification process. Among other duties, I am responsible for having the documents distributed to all associates of RJA and other RJF subsidiaries for the annual certification, and confirming that all annual certifications are completed online and submitted.

    3. Attached to this Declaration as Exhibit "A" is a true and correct copy of the Arbitration Agreement linked to the Raymond James Financial Business Ethics and Corporate

Policy that Kristin Hubbard electronically acknowledged and signed on or about November 1, 2006.

4. Attached to this Declaration as Exhibit "B" is a true and correct copy of the "Ethics/Corporate Policy & Handbook Certification Electronic Signature Confirmation" that Ms. Hubbard executed on or about November 10, 2006.

5. Attached to this Declaration as Exhibit "C" is a true, correct, and authentic copy of the Raymond James Financial Business Ethics and Corporate Policy referenced in Ms. Hubbard's annual certification, and which links to Ms. Hubbard's Arbitration Agreement. This Policy was issued to all RJA employees, including Ms. Hubbard, in or about November 2006.

6. The exhibits attached hereto are maintained in RJA's files in the regular course of its business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on April __, 2008, in St. Petersburg, Florida.

FURTHER AFFIANT SAYETH NOT.

_____
Heather Mueller



M. A. HARTZELL
MY COMMISSION # DD 526530
EXPIRES: May 31, 2010
Bonded Thru Notary Public Underwriters

# EXHIBIT A
## TO DECLARATION OF H. MUELLER

## Arbitration Agreement Signature Page

**Instructions:** All new associates must sign and return all pages of this Arbitration Agreement together with the completed RJF Business Ethics and Corporate Policy Signature Page when they are hired.

1. This Arbitration Agreement ("Agreement") is entered into by and between the Associate and Raymond James Financial, Inc. (hereafter "Company") (collectively referred to as the "Parties"). The Parties agree as follows:
2. In consideration of the Associate's employment with the Company, the Parties agree that any controversy or claim arising out of or relating to the application for employment, employment relationship or termination of employment with the Company must be submitted to arbitration including but not limited to: the application or interpretation of the Company's handbook and/or policies; all claims of employment discrimination, harassment or failure to accommodate on the basis of race, sex, age, religion, color, national origin, pregnancy, disability, height, weight, marital status, familial status and/or veteran status including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, Pregnancy Discrimination Act, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Elliott-Larsen Civil Rights Act, Persons With Disabilities Civil Rights Act, Older Worker Benefit Protection Act, or other federal, state or local laws; claims arising out of or relating to benefit terms, right to commissions, and/or wages and compensation terms including but not limited to claims under the Family Medical Leave Act, ERISA, Fair Labor Standards Act, Payment of Wages and Fringe Benefits Act, Sales Representatives Commission Act, or other federal, state or local laws; claims based on public policy; tort claims including but not limited to assault, battery, negligence or emotional distress; any other claim under federal, state or local laws. This agreement is mutual, and thus the Employer similarly is required to submit any claim or controversy arising out of or relating to the Associate's employment to arbitration. Also, the Parties acknowledge that the above specifically includes, but is not limited to, whether the dispute is arbitral.
3. Arbitration shall be the sole and exclusive means of resolving any of the claims or controversies referenced in the preceding paragraph, and shall be administered pursuant to the rules of the National Association of Securities Dealers (NASD) in effect at the time when a demand for arbitration ("Demand") under this Agreement is made, but for the cost provision, amendments of which are set forth in Paragraph 4(E) of this Agreement. The Parties agree that the decision and award of the arbitrators under this Agreement shall be exclusive, final, and binding on all parties, their heirs, executors, administrators, successors, and assigns. A copy of the applicable rules can be downloaded from the NASD website.
4. Judgment may be entered in any court having jurisdiction upon an award rendered by arbitrators pursuant to this Agreement.
5. The Parties further agree:
    a. The arbitration process will begin when either the Associate or the Company file a Demand with NASD, and any Demand shall be filed in compliance with the statute of limitations applicable to the claims asserted in the Demand. Upon filing a Demand, the Company will provide Associate with a copy of the NASD rules then in effect.
    b. Nothing in this Agreement prevents the Associate from filing a complaint with the EEOC, NLRB, or other administrative agency having authority over claims asserted in the Demand.

   c. The Associate is entitled to representation of counsel or any person whom he/she may designate for the arbitration. The cost of any such representation shall be the Associate's sole responsibility.
   d. Arbitrator selection will be conducted in accordance with the NASD rules.
   e. For all claims alleging unlawful employment discrimination or harassment or violation of any statute by the Company, the Company shall fully bear responsibility for the arbitrator's fees and expenses. Otherwise, the expense of arbitration shall be shared equally by the Company and the Associate.
   f. The arbitration hearing shall be conducted at an NASD hearing site located nearest to the location where Associate worked for Employer.
   g. The parties shall conduct pre-hearing discovery in accordance with the NASD Code of Arbitration Procedure.
   h. The Parties agree that the arbitrators shall decide all pre-hearing disputes arising out of or relating to the claims raised in the Demand or this Agreement, prior to deciding issues associated with the merits of the claims raised in the Demand for arbitration.
   i. The arbitrators shall have the right to award any damages and/or remedies that would be available under the applicable laws, and any other relief in law or in equity the arbitrators deem just. Any award issued shall be in writing and shall include findings of fact and conclusions of law reached by the arbitrator. The decision of the arbitrators will be final and binding on the Parties.
   j. The interpretation and enforcement of the provisions of this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §1, et. seq. provided they are enforceable thereunder, and shall otherwise be governed by the laws of a) the State of Michigan where Associate is employed in Michigan, or b) the laws of the State of Florida where the Associate is employed outside the State of Michigan. In the event of a dispute arising out of or relating to the meaning of this Agreement, the laws of the State of Michigan shall be applied in resolving such dispute where the Associate is employed in Michigan, otherwise the laws of the State of Florida shall apply. Further, in the event of a claim or controversy arising under this Agreement, the laws of the State of Michigan shall be applied in resolving any such claim or dispute where the Associate is employed in Michigan, otherwise the laws of the State of Florida shall apply.
   k. In interpreting this Agreement, no arbitrator shall have any power to add to or to subtract from or modify any of the terms of the Employee Handbook, nor shall such arbitrator substitute his/her discretion for that of the Company, nor shall such arbitrator exercise any responsibility or function of the Company or Associate including but not limited to that the Arbitrator shall have no authority to modify the "at-will" status of an Associate.
   l. The Associate has the right to consult with an attorney of his/her choosing before signing this Agreement.
6. Associate's agreement hereunder represents that he/she:
   a. Has received a copy of this Agreement;
   b. Has voluntarily and knowingly acknowledged and agreed to the arbitral process as set forth in this Agreement and pursuant to the terms described herein as a condition of employment, that this Agreement is a binding contract, and that any changes or modifications to this Agreement must be in writing and require the consent and agreement of both the Company and the Associate.
7. The parties further understand:
   a. If Associate is employed by the Company, such employment is "at will" and this Agreement in no way changes that at-will relationship. Associate understands that the "at-will" employment relationship means the Associate

   is free to terminate his/her employment, at any time, for any or no reason, with or without notice and/or cause, and the Company retains the same rights.
   b. In termination cases, the arbitrator shall honor the right of both the Associate and the Company to terminate employment "at will." This specifically includes, but is not limited to, the arbitrator shall have no authority to reinstate associates who have been lawfully discharged.
8. ASSOCIATE UNDERSTANDS AND AGREES THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A WAIVER OF HIS/HER RIGHT TO A TRIAL BY JURY OF ANY MATTERS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.
9. Associate acknowledges that his/her agreement represents that he/she has carefully read this Agreement, has had the opportunity to consult with an attorney of his/her choosing, and voluntarily and knowingly agrees to abide by the terms of this Agreement.

Revised 6/19/06

**Arbitration Agreement Electronic Signature Confirmation**

1. This Arbitration Agreement ("Agreement") is entered into by and between the Associate and Raymond James Financial, Inc. (hereafter "Company") (collectively referred to as the "Parties"). The Parties agree as follows:
   Click Here to View the Policy

**Select the radio button to attest to the following statement:**

| I have read, understand, and agree to all of the above statements. | ⊙ |
|---|---|

| | |
|---|---|
| **Associates Name:** | Hubbard, Kristin |
| **Department/Branch:** | 17U02 |
| **Date:** | 11/01/2006 |
| **Signature (NT Login ID):** | 532673 |

# EXHIBIT B
## TO DECLARATION OF H. MUELLER

**Ethics/Corporate Policy & Handbook Certification Electronic Signature Confirmation**

**Scroll down to view the entire policy**

After reading the following information and linked policies, please submit your acceptance electronically by marking the checkbox and clicking the "submit" button at the bottom of this page.

- All associates must read the RJF Business Ethics and Corporate Policy:
  http://lawncrest.rjf.com/HR/CONTENT/ER/RJFethics.htm
- All associates must read the current version of the Associate Handbook:
  http://lawncrest.rjf.com/HR/CONTENT/ER/HBIndex.htm
- If you are securities licensed under Raymond James & Associates, Inc., including home office or branch non-income producers, you must also read the RJA Financial Advisor Instructions:
  http://lawncrest.rjf.com/HR/CONTENT/ER/RJA_FA_Instructions.htm

I have been provided a copy of the RJF Business Ethics and Corporate Policy of Raymond James Financial, Inc. ("Raymond James") either electronically or in hard copy format. I certify that I have thoroughly reviewed and understand the policies and regulations therein. I also attest that I have reviewed the current Associate Handbook version posted on RJ Net (if a Company employee) and understand its contents. I understand that the guidelines and policies set forth are not all inclusive, and that management expects every Associate to comply with its policies as may be published elsewhere in other company documents.

I have reviewed the Anti-Money Laundering Policy including any training updates within the prescribed time periods. (The AML policy is included in the Associate Handbook.)

**If securities licensed under Raymond James & Associates, Inc. (including home office and branch non income producers):** I certify that I have also reviewed and understand the RJA Financial Advisor Instructions. If I am a Private Client Group (Retail) Financial Advisor, I acknowledge that any officer title awarded to me is one of recognition in sales. This title does not indicate I am a corporate officer. I am not allowed or authorized to sign documents as a corporate representative of the firm. My officer title must always be followed by the word "Investments."

I have been offered an opportunity to ask questions about any provisions that are unclear. I agree to abide by the provisions of all of these documents. Additionally, I specifically authorize Raymond James, from time to time in their discretion, to obtain a full consumer (credit) report, and I acknowledge receipt of the "Consumer Disclosure" included in the Associate Handbook.

I understand that the Associate Handbook is not a contract for employment, but that compliance with its guidelines and policies are conditions of employment. In keeping with the Employment at Will doctrine, Associates have the right to leave the Company at any time, and the Company has the right to terminate the employment relationship at any time.

I have disclosed all outside business activities to my supervisor and Compliance, and I have disclosed to Compliance and obtained their written approval of all outside accounts (outside accounts are generally not permitted.)

I further certify that I have disclosed to the Human Resources Department (and Registrations Department, if securities licensed) if I have ever been arrested, indicted, convicted, or entered a plea of guilty or nolo contendere in connection with any misdemeanor or felony, other than minor traffic offenses. (Driving Under the Influence (DUI) must be disclosed.) I also certify that I have disclosed to the Human Resources Department (and Registrations Department, if securities licensed) any bankruptcies or credit compromises during the past 10 years, and any outstanding judgments/liens. (Report all issues immediately at both initiation and resolution to avoid NASD late filing fee.)

**Select the radio button to attest to the following statement:**

| I have read, understand, and agree to all of the above statements, including the information in the linked documents. | ⊙ |
|---|---|

Click **Submit** to continue to the Arbitration Agreement

| **Associates Name:** | Hubbard, Kristin |
|---|---|
| **Department/Branch:** | 17U02 |
| **Date:** | 11/10/2006 |
| **Signature (NT Login ID):** | 532673 |

# EXHIBIT C
## TO DECLARATION OF H. MUELLER



# Human Resources / Employee Relations - RJF Business Ethics and Corporate Policy

## BUSINESS ETHICS AND CORPORATE POLICY
## OF RAYMOND JAMES FINANCIAL, INC.

Raymond James Financial, Inc. (the "Company" inclusive of all its subsidiaries and affiliates) expects its Associates (employees and its independent contractor Financial Advisors and anyone affiliated with them) to exercise the highest degree of professional business ethics in all actions they undertake on behalf of the Company. In furtherance of that objective, the Company expects its Associates to act in accordance with the RJF Business Ethics and Corporate Policy, which is distributed to new Associates and affirmed annually by all Associates. Registered associates will also be responsible for reading and understanding the Financial Advisor Instructions. This annual affirmation of the RJF Business Ethics and Corporate Policy is a condition of continued employment or affiliation.

This RJF Business Ethics and Corporate Policy is being issued in addition to the Associate Handbook, which you have previously received if you are a company employee. If you are an employee, by signing the Annual Certification Signature Page you are also representing that you have reviewed the Associate Handbook and understand its contents. **It is, therefore, important that all company employees re-read the** Associate Handbook **at this time.**

The RJF Business Ethics and Corporate Policy (the "Policy") is not exhaustive; it provides guidance for carrying out your responsibilities on behalf of the Company and observing the highest standards of ethical conduct. Because the Policy does not address every possible situation that may arise, you are responsible for exercising good judgment, applying ethical principles, and raising questions when in doubt.

## GENERAL STATEMENT

1. Neither the Company, nor any of its Associates, for their own accounts or others, shall purchase or sell securities while in the possession of information which might be considered "insider" (material, non-public) information, or discuss the information with a third party, unless a written opinion has been furnished by the Company's attorney stating that in his or her opinion the proposed transaction or discussion would not violate the anti-fraud provisions of federal or state securities laws. Information is material if there is a substantial likelihood that its public disclosure would affect either a reasonable investor's decision to buy, sell, or hold securities or the market value of securities. Information is "non-public" if it is not made generally available by the means best calculated to make it publicly available. The SEC has opined that appropriate public disclosure is required.
2. The Company and its Associates shall comply with all applicable legal requirements of the

Human Resources/Employee Relations - RJF Business Ethics and Corporate Policy

United States and each state or foreign country in which the Company conducts its business. Specifically, but not exclusively, all Associates must abide by the laws and regulations of the Securities and Exchange Commission, state regulators and self-regulatory organizations including the National Association of Securities Dealers and the various exchanges with which the Company is associated, to the extent applicable.
3. No undisclosed or unrecorded fund or asset of the Company shall be established or maintained for any purpose.
4. No payment on behalf of the Company shall be approved without adequate supporting documentation, or shall be made with the intention or understanding that any part of the payment is to be used for any purpose other than that described by the documents supporting the payment.
5. The use of Company associates, materials or equipment for personal purposes is prohibited, unless specifically authorized.
6. Compliance with generally accepted accounting principles and established internal control procedures is required at all times.

## CONFIDENTIAL AND/OR PROPRIETARY INFORMATION OF THE COMPANY; CONFIDENTIALITY OF CUSTOMER INFORMATION

In carrying out the Company's business, associates often learn confidential or proprietary information about the Company or its customers.

The Company's business records, including but not limited to customer lists, customer data, sales information, business methodologies, compensation records, and/or similar information are considered to be trade secrets to be used solely in the conduct of the Company's business. No such information shall be obtained, used or revealed by associates unless specifically authorized by their supervisor in the course of their regular job functions. Unauthorized use of Company information or customer information, whether within or outside the Company, is a most serious violation and may result in immediate termination. Associates may not disclose Company's business or customer information to anyone or any firm outside the Company unless (i) the outside firm needs to know the information in order to perform services for the company and is bound to maintain its confidentiality; (ii) when the client has consented or been given an opportunity to request that the information not be shared (iii) as required by law or self-regulatory organization, or (iv) as authorized by the Compliance Department or the Legal Department. Associates may not divulge proprietary or confidential information, either related to the Company or to customers of the Company, to other associates unless a need-to-know basis is established in order to fulfill their responsibilities to the Company.

Likewise, unauthorized interception of Company communications, whether electronic (email), oral (telephonic), or documentary, is a violation of policy that may subject the violator to immediate termination.

Associates should be mindful of these obligations when using the telephone, fax, telex, electronic mail and other electronic means of storing and transmitting information. Associates should not discuss confidential information in public areas where it can be overheard, read confidential documents in public places or leave or discard confidential documents where they can be retrieved by others. Associates should shred all documentation containing personal or confidential customer or associate information when no longer needed.

Theft or other misuse of trade secrets and/or proprietary information will be prosecuted to the full extent provided by law. Departing associates are not permitted to take or divulge any of the data described above in the event they leave the Company, except as permitted by the RJA Financial Advisor Instructions.

## CONFLICTS OF INTEREST

The Company expects the undivided loyalty of its associates in the conduct of Company business. It is important that associates be free from any financial interests or other relationships that might conflict with the best interests of the Company and/or cloud their judgment in carrying out the business affairs of the Company. A "conflict of interest" exists when a person's personal or professional interest is adverse to, or may appear to be adverse to, the interests of the Company. A conflict of interest may arise when an associate or a member of the associate's family receives improper personal benefits as a result of the associate's position within the Company. Accordingly, associates must report any conflict of interest to their department head and the Chair of the Corporate Governance Committee.

## CORPORATE HOTLINES

Raymond James has established a hotline for reporting any concerns regarding actions of another associate that you do not feel comfortable reporting to your supervisor, or through the normal lines of supervision within your department. This hotline is a way for Raymond James associates to register their concerns about matters which could affect the company's welfare confidentially and without fear of retaliation. The line will be monitored by the Human Resources Department which will initiate inquiries, investigations or follow up as needed. Details about the Corporate Hotline can be found in the Associate Handbook under "Standards of Performance and Conduct." Link to the Associate Handbook Index: http://lawncrest.rjf.com/HR/Content/ER/HBIndex.htm

## PRIVACY

In the conduct of business the Company and its associates collect and retain personal and confidential information about individuals. In order to strike a workable balance between the need for information and the privacy of individuals, associates shall be guided by the following principles in the collection, storage, use, and dissemination of information about the persons to whom the Company provides investments, insurance products, and other services.

1. Seek to obtain personal information only if pertinent to the effective conduct of Company business.
2. Obtain personal data by lawful and ethical means only and, to the extent practicable, obtain it directly from the individual concerned.
3. Make every effort to ensure the accuracy, completeness, timeliness, and relevance to the specific business purpose of any information concerned.
4. Make every effort to inform the individual what information will be collected, how it will be collected, and for what purposes it will be used. This requirement shall not apply to investigations involving possible criminal activity, fraud or security violations, and internal investigations by the Audit, Compliance, Legal or other departments.
5. Where required by law, make available to individuals any information that is maintained on them. In so doing, the Company reserves the right to protect the privacy of the source of the

information.
6. Permit clients or associates to clarify or supplement the information held by the Company, and to correct or delete any information known to be inaccurate.
7. Limit access to information in the Company's records to those persons who have a bona fide business-related need to see it, or whose request is based on valid legal process or proper regulatory purpose.
8. Store and safeguard confidential information in a manner appropriate to its nature.
9. When creating, designing or revising any information system, ensure that the system as designed or revised is consistent with these principles.

## POLITICAL ACTIVITIES AND CONTRIBUTIONS

The Company will not make any contributions or expenditures to or for any political parties, committees, or candidates for any public office, or to any persons for any political purpose whatsoever, regardless of whether it is proposed to be made in the United States or a foreign country or whether it would or would not be in violation of local law unless it is through a PAC established by the Company. "Contributions or expenditures" includes any direct or indirect payments, distributions, loans, advances, deposits, gifts, purchases, or tickets to dinners or other fund raising events, services (including transportation), equipment or any other items of value made to or for political candidates, parties or committees.

Although the Company encourages all associates to participate individually in civic affairs and in the political process, the Company will not reimburse associates for any expenses incurred in connection with those activities. Associates who engage in civic or political affairs must do so on their own time and at their own expense and may not use Company facilities or resources in doing so. Additionally, associates may not apply any pressure, direct or implied on any other associate that infringes on an associate's right to decide whether, to whom and in what amount a personal political contribution is to be made. (see Community Activities on Company Property policy in Employee Handbook).

Associates shall not make any contributions or expenditures to or for any candidates for any public office, or to any persons for any political purpose whatsoever that would violate the Company's policy on political contributions or any law, rule or regulation, and in particular MSRB Rule G-37. For more information, refer to the political contribution policies on the Digest.

## RECORDING AND AUDITING TRANSACTIONS

The Company has a responsibility under the law to communicate effectively so that the public is provided with full and accurate information in all material respects. To the extent that the associate is involved in the preparation of materials for dissemination to the public, the associate should be careful to ensure that the information in these materials is truthful, accurate and complete. If the associate becomes aware of a materially inaccurate or misleading statement in a public communication, the associate should report it immediately to the Chief Legal Counsel or Audit Committee or Board of Directors. Associates shall not intentionally falsify any memorandum, record or document of the Company or intentionally make a materially false or misleading statement to an accountant or representative of a regulatory agency in connection with any examination or audit of the Company's financial affairs.

Authority to open and maintain bank accounts and to arrange for the deposit or withdrawal of corporate funds has been delegated by resolution of the Board of Directors to specified personnel. All withdrawals from approved accounts shall be only by corporate check or by interbank transfer (including electronic fund transfers - EFTs/ACHs) to other Company accounts, and no check may be issued to "cash" or to a numbered bank account unless other information sufficient to identify the persons receiving the benefit of the payment appears on the face of the check. No check may be issued in a transaction that involves the direct or indirect setting aside or earmarking of funds, accounts, or monies that, regardless of purpose, are not clearly recorded and accessible to and understandable by the Company's auditors.

## ARBITRATION AGREEMENT

Link to the Company's Arbitration Agreement.

## ENFORCEMENT OF THE BUSINESS ETHICS CODE

The Company shall determine appropriate actions to be taken in the event of violations of this Code. Such actions are reasonably designed to deter wrongdoing and to promote accountability for adherence to the Code.

## RAYMOND JAMES GOLDEN RULE POLICY
(Client/RJF Associate Transfer Guidelines)

*The following is a statement of Raymond James Financial policy on handling matters that involve creating a new relationship with clients or associates already affiliated with RJF.*

In all matters involving our fellow RJF associates[1], we will act as we might wish they would act toward us in similar circumstances, were our roles reversed. This describes our agreement to do nothing to solicit or encourage an investor to change from one financial advisor[2] to another, or an RJF associate to change from one RJF supervisor[3] to another.

Where either of the above occurs (**always without solicitation or encouragement**), the prospective new financial advisor or supervisor will observe the following protocol.

A. When any RJF associate encounters an investor that has an existing RJF account relationship, the proper approach will be as follows:

1. The existing financial advisor should be completely supported. Do not generate or encourage any concerns noted by the investor. This includes your review of the suitability of the investments in a standard account review. *You are not to discuss your concerns with the investor but should report anything that seems inappropriate or out of the ordinary to the Compliance Department and await direction before supporting the investor.*

2. If the client, *unsolicited*, states that he/she wants to open a new account or change advisors, the

client should be told that the existing financial advisor must be contacted before that can occur. The client will be required to sign a statement verifying that the request to open a new account or transfer the account is unsolicited. The prospective new advisor must inform the existing financial advisor of the situation through direct telephone contact; email and voicemail are not acceptable. The prospective new advisor should also request that the client inform his/her existing advisor of the impending change. Email or voicemail by the client to the existing advisor is allowed.

3. If the client insists that he/she does not want to speak with the existing advisor, or does not want the financial advisor to call the existing advisor, then the new financial advisor must inform his/her branch manager or Sales Management Department of this information. The branch manager or Sales Management staff will inform the existing advisor.

If it is determined that a new account will be opened with the client or an existing account transferred to a new financial advisor:

1. After the existing financial advisor or branch manager has been notified, the new financial advisor must employ a delay of two (2) business days before submitting the Change Form (1121) or updated New Account Form to move the existing account. This will allow the existing advisor an opportunity to contact the client, as well as copy all electronic account data for his/her permanent files. This delay is unnecessary if the existing financial advisor authorizes the immediate movement of the account. If the client requests an immediate transaction, instruct the client to contact their current financial advisor or the Raymond James Client Services Department.

2. The new financial advisor will require the client to sign the Change Form (1121), verifying the transfer of the account.

3. Contacts that result from a mass marketing campaign will be handled in the same manner as described above.

B. When any RJF supervisor encounters another RJF associate and communication about a change of affiliation to the prospective supervisor ensues, the following is to be observed by the prospective RJF supervisor **(RJF Home Office and RJA only)**:

1. Advise the RJF associate that permission (if not a positive reference) by the existing RJF supervisor is required before communication continues, and that no subsequent communication may take place before the existing supervisor has been contacted.

2. If a second contact occurs before the completion of the prior step, the prospective supervisor will cease communication and notify the associate that he/she will inform the existing supervisor before any communication continues.

3. After acknowledgment is received from the existing supervisor and the prospective supervisor has received an *Application for Transfer*, the prospective supervisor may answer the associate's questions and provide relevant information about the new position. All communication must adhere to all other corporate policies and procedures. Please refer to the Human Resources transfer policy and/or the applicable Private Client Group sections of the Digest for further

information.

C. The following protocol is to be observed when any RJFS office attempts to hire an RJF associate, including RJFS, RJAS, and RJA branch associates:

1. Advise the RJF associate that permission (if not a positive reference) by the existing RJF supervisor is required before communication may continue.

2. After receiving permission from the existing RJF supervisor, the RJFS office may continue open communication about the position with the RJF associate.

**RJF will not tolerate solicitation of existing clients or RJF associates. Failure to adhere to this policy may subject the offending party to fines or other administrative actions. Violations may result in a reversal of commissions to the former financial advisor.**

Adherence to the "Golden Rule Policy," will demonstrate a cohesive, caring culture to all RJF clients and associates. We believe that when everyone handles these challenges and opportunities as if the involved individuals are on the same team, we all benefit.

Please feel free to contact your sales management team with any questions regarding the "Golden Rule Policy."

---

[1] "RJF associate" as used herein includes any associated person of RJA and RJFS including employees, independent contractors and other parties affiliated with Raymond James Financial, Inc.
[2] "Financial advisor" as used herein includes all registered representatives and registered principal affiliates with RJA and RJFS, and includes investment advisors affiliated through the Investment Advisor Division.
[3] "RJF supervisor" as used herein includes all RJA and RJFS branch managers and owners, all IAD affiliate firms' executives, and all Home Office supervisors and department managers.

Go Back To Top of Page

| Human Resources Menu ||
|---|---|
| **Employee Relations pages** | |
| Anniversaries This Month \| Birthdays This Month | Group/Corporate Insurance |
| Awards | RJ Travel |
| Classified Ads | Raymond James University - RJU |
| Employee Discounts | Personnel Directory |
| ERC - Employee Relations Committee | |
| RJ Daily Gazette (Add to your Favorites!) | |
| New Associate Information | |
| Volunteer Opportunities | |

Human Resources/Employee Relations - RJF Business Ethics and Corporate Policy

To report a broken link, please contact the Digest Author for this page.

Updated July 24, 2006
Copyright © 2006, Raymond James & Associates